UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
────────────────────────────────────────────

JUSTIN SMITH,

                            Plaintiff,

v.                                               5:09-CV-273
                                                      (GTS/GHL)

MICHAEL J. ASTRUE,
*Commissioner of Social Security*,

                            Defendant.
────────────────────────────────────────────

APPEARANCES:                               OF COUNSEL:

OLINSKY & SHURTLIFF                  JAYA SHURTLIFF, ESQ.
Counsel for Plaintiff
300 South State Street, Suite 520
Syracuse, New York 13202

SOCIAL SECURITY ADMINISTRATION     SANDRA M. GROSSFELD, ESQ.
Office of General Counsel                     Special Assistant U.S. Attorney
Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GEORGE H. LOWE, United States Magistrate Judge

## **REPORT-RECOMMENDATION**[1]

**I.    BACKGROUND**

    **A.    Procedural History**

On December 20, 2005, Plaintiff Justin Smith protectively applied for supplemental security income ("SSI"). *See* Administrative Transcript ("T") 16, 70-71. On May 18, 2006, his application was denied by the Social Security Administration. T 59. On June 3, 2008, a hearing

---

[1] This matter was referred to me for report and recommendation by the Honorable Glenn T. Suddaby, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.

was held before an Administrative Law Judge ("ALJ").[2] T 299-325. On June 12, 2008, the ALJ determined that Plaintiff was not disabled. T 13-22.

Plaintiff appealed to the Appeals Council. T 11-12. On January 30, 2009, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. T 5-7. Plaintiff commenced this action on March 9, 2009. Dkt. No. 1.

### B.     Plaintiff's Contentions

Plaintiff makes the following claims:

1. The ALJ erred when he failed to find that Plaintiff's bipolar disorder was a severe impairment. Dkt. No. 12 at 12-13.

2. The ALJ failed to apply the appropriate legal standards when evaluating Plaintiff's residual functional capacity ("RFC"). Dkt. No. 12 at 13-16.

3. The ALJ failed to apply the appropriate legal standards when evaluating Plaintiff's credibility. Dkt. No. 12 at 16-18.

4. The ALJ erred when he failed to consult a vocational expert. Dkt. No. 12 at 18-19.

Defendant disagrees, and argues that the decision finding Plaintiff not disabled should be affirmed. Dkt. No. 13.

## II.    APPLICABLE LAW

### A.     Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or supplemental security income benefits must establish that he is "unable to engage in any

---

[2] It is unclear why more than two years lapsed from the time Plaintiff was initially denied benefits to the date the hearing was held.

2

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. §§ 405(a), 1383(d)(1)), the Social Security Administration ("SSA") has promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 404.1520. "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

> At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." [20 C.F.R.] §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. [20 C.F.R. §§] 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled.[] If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is

3

capable of performing other jobs existing in significant numbers in the national economy.[] [20 C.F.R.] §§ 404.1520(f), 404.1560(c), 416.920(f), 416.9630(c).

*Barnhart v. Thomas*, 540 U.S. at 24-25 (footnotes omitted).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *See Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002). If the plaintiff-claimant meets his or her burden of proof on all four steps, the burden then shifts to the defendant-Commissioner to prove that the plaintiff-claimant is capable of performing other jobs which exist in significant numbers in the national economy. *Id.* (quoting *Carroll v. Secretary of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

### B.      Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986. In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Ferraris v. Heckler*, 728 F.2d 582, 587-88 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support

4

a conclusion.'" *Williams o/b/o Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983).

### III.  THE PLAINTIFF

At the time of the administrative hearing, Plaintiff was twenty-nine years old. T 303. He alternated living with his mother, sister, and girlfriend. T 304, 311-12.

Plaintiff obtained his general equivalency diploma in 1997. T 85. Plaintiff was incarcerated off-and-on from 1997 to 2005.[3] T 315. During one period when he was released, he briefly took classes at a community college. T 304. Plaintiff also briefly worked as a laborer, and for a furniture company, assembling and delivering furniture. T 305-07.

Plaintiff alleges disability due to farsightedness, protein S deficiency, deep vein thrombosis, blood clots, and "histocytosis X." T 80. At the hearing, he stated that he was also diagnosed as suffering from rheumatoid arthritis, and bipolar disorder. T 310.

---

[3] Plaintiff stated that he was convicted of burglary and robbery. T 315.

5

**IV.    THE ALJ'S DECISION**

In determining that Plaintiff was not disabled, the ALJ made the following findings:

1. Plaintiff had never engaged in substantial gainful activity.  T 18.

2. Plaintiff's "venous insufficiency secondary to deep venous thrombosis and cosinophilic granuloma,"[4] were severe impairments.  T 18.

3. Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  T 19.

4. Plaintiff had the RFC to perform medium work.  He should avoid concentrated exposure to fumes, dusts, odors, and gasses.  T 19-21.

5. Plaintiff had no past relevant work history.  Considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  Therefore, Plaintiff was not disabled.  T 21-22.

**V.    DISCUSSION**

    **A.    Severity**

Plaintiff argues that the ALJ erred when he failed to find that his bipolar disorder was a severe impairment.  Dkt. No. 12 at 12.  Defendant argues that the ALJ committed no such error.  Dkt. No. 13 at 10-12.

As stated above, step two of the sequential evaluation process requires a determination as to whether the claimant has a severe impairment which significantly limits the physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  The ability to do basic work activities is defined as "the abilities and activities necessary to do most jobs."  20 C.F.R. §

---

[4] Granuloma is an imprecise term applied to either a small, nodular, delimited aggregation of mononuclear inflammatory cells, or a similar collection of epithelioid cells. *Dorland's Illustrated Medical Dictionary* 814 (31st ed. 2007).

6

404.1521(b). Basic work activities which are relevant for evaluating the severity of a mental impairment include understanding, carrying out, and remembering simple instructions, using judgment, responding appropriately to supervision, co-workers, and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b).

An impairment is severe if it causes more than minimal functional limitations. 20 C.F.R. § 416.924(c). Age, education, and work experience are not evaluated in determining if the impairment or combination of impairments are severe. 20 C.F.R. § 416.920(c). The severity analysis does no more than "screen out *de minimis* claims." *See Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995) (citations omitted). If the disability claim rises above the *de minimis* level, then further analysis is warranted. *See id.*

Here, the ALJ specifically found that Plaintiff's bipolar disorder was a non-severe impairment. T 19. He explained that Dennis Noia, Ph. D., an examining psychologist, indicated that **there was no Axis I or Axis II diagnosis**,[5] and that **Plaintiff was capable of performing basic mental work activities**. T 19 (citing T 263-64). The opinion of a consultative examiner, such as Dr. Noia, may constitute substantial evidence in support of an ALJ's decision. *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983) (citations omitted).

The ALJ also pointed out that a state agency review physician indicated that **Plaintiff was not significantly limited in any mental activity required to sustain a normal workday or**

---

[5] There are five axes included in the Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV-TR"). DSM-IV-TR 27 (American Psychiatric Association, 4th Ed. Text Revision 2000). Axis I is for reporting clinical disorders except for the Personality Disorders and Mental Retardation (which are reported on Axis II). *Id.* Axis II, as noted, is for reporting Personality Disorders and Mental Retardation. *Id.* at 28. It also may be used for noting prominent maladaptive personality features and defense mechanisms. *Id.*

**work-week**. T 19 (citing T 275-78).  Indeed, Richard Nobel, Psy. D., found no significant limitations, and stated that Plaintiff would be capable of understanding and carrying out simple instructions, making simple work decisions, responding appropriately to supervisors and co-workers, and adapting to changes in a work setting.  T 275-77.  The ALJ also pointed out that Dr. Nobel indicated in a Psychiatric Review Technique form that Plaintiff's affective disorder was non-severe.  T 19 (citing T 280).  As the ALJ noted, (T 19), the findings of fact made by State agency psychological consultants regarding the nature and severity of an individual's impairment(s), "must be treated as expert opinion evidence . . . at the [ALJ] and Appeals Council levels of administrative review."  Social Security Ruling ("SSR") 96-6p, 1996 WL 374180, at *1 (S.S.A. July 2, 1996).

The ALJ also explained that Plaintiff was taking no medication for his bipolar disorder.  T 19.  Moreover, at the hearing, Plaintiff testified that he was not presently receiving counseling for any mental health reason.  T 311.

In arguing that his bipolar disorder should have been found severe, Plaintiff claims that he took medications from time-to-time for this condition, and that he had prescriptions for this condition, but was unable to fill the prescriptions due to financial reasons.  Dkt. No. 12 at 12 (citing T 322).  He also states that in order to control his anxiety, he stays at home, avoids people, and has a history of "flipping out," yelling, and becoming very angry, which he testified to at the hearing.  Dkt. No. 12 at 12 (citing T 320-21).  However, the Court notes that the ALJ properly found that Plaintiff was not totally credible.  T 20-21; *see infra* Part (V)(C).  Moreover, an impairment cannot be based on a claimant's statement of symptoms alone.  20 C.F.R. § 416.908.

8

Plaintiff also argues that the opinion of Howard Amann, M.D., whom he claims is a treating physician, supports a finding of severity. Dkt. No. 12 at 13. However, as Defendant argues, Dr. Amann simply noted that Plaintiff had a "history" of bipolar disorder.[6]  T 287. Moreover, while Dr. Amann rated certain of Plaintiff's mental abilities to perform work as "fair,"[7] none of Plaintiff's mental abilities were rated poor or nonexistent. T 288-89.

In sum, I find that the ALJ's finding that Plaintiff's bipolar disorder was a non-severe impairment was supported by substantial evidence. Accordingly, I recommend that the matter in this regard be affirmed.

### B.   Residual Functional Capacity

Plaintiff argues that the ALJ failed to apply the appropriate legal standards in evaluating Plaintiff's RFC. Dkt. No. 12 at 13-16. Specifically, he claims that the ALJ failed to indicate on what medical evidence he relied when making this determination, incorrectly weighed Dr. Amann's opinion, and failed to develop the record. *Id.* Defendant argues that the RFC finding was supported by substantial evidence. Dkt. No. 13 at 12-18.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue. 20 C.F.R. § 404.1545(a). An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities

---

[6] Plaintiff argues that the ALJ failed to discuss Dr. Amann's opinion. Dkt. No. 12 at 13. However, as Defendant points out, the ALJ specifically discussed Dr. Amann's opinion, albeit at a different step of the five-step inquiry. Dkt. No. 13 at 12 n.5 (citing T 20).

[7] "Fair" was defined as an ability that was seriously limited, but not precluded. T 287.

9

on a regular and continuing basis. *Id.*; *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).

To properly ascertain a claimant's RFC, an ALJ must assess a claimant's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push and pull. 20 C.F.R. § 404.1569a. Non-exertional limitations or impairments, including impairments that result in postural and manipulative limitations, must also be considered. 20 C.F.R. § 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e). When making an RFC determination, an ALJ must specify those functions that the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *Martone*, 70 F. Supp. 2d at 150. Further, "(t)he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations)." S.S.R. 96-8p, 1996 WL 374184, at *7 (S.S.A.). An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations. *Martone*, 70 F. Supp. 2d at 150.

Here, the ALJ found that Plaintiff retained the RFC to perform medium work,[8] and that he should avoid concentrated exposure to fumes, dusts, odors, and gasses. T 19-21. In making this determination, the ALJ pointed out that consultative examiner Kalyani Ganesh, M.D., opined that **Plaintiff had no physical limitation to sitting, standing, walking or using his upper**

---

[8] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. 20 C.F.R. § 404.1567(c). If someone can do medium work, he or she can also do sedentary and light work. *Id.*

10

**extremities**.  T 20 (citing T 253-56).  Dr. Ganesh also found that during the examination, Plaintiff "appeared to be a muscular individual in no distress," his gait was normal, he could walk on heels and toes without difficulty, his squat was full, his stance was normal, he used no assistive device, he needed no help changing for the examination or getting on-and-off the table, and he was able to rise from the chair without difficulty.  T 254.  Plaintiff exhibited a full-range-of-motion with his upper and lower extremities, and spine, and exhibited full strength in all muscle groups.  T 255.

The ALJ also pointed out that a state agency disability analyst opined that Plaintiff could perform medium work.  T 20 (citing T 269-74).  The ALJ also discussed an opinion rendered by Dr. Amann, and after a thorough discussion, afforded it "very little weight."  T 20.

Plaintiff first argues that the ALJ failed to "indicate [on] what medical source he based his findings," and failed to base the RFC finding on *medical* evidence.  Dkt. No. 12 at 13-14.  These arguments are unavailing.  As noted, the ALJ specifically cited the medical opinion of Dr. Ganesh, who is a **medical doctor**.  T 20.  To the extent that Plaintiff argues that Dr. Ganesh rendered no opinion as to Plaintiff's functional abilities, Dkt. No. 12 at 15, Dr. Ganesh specifically opined that **Plaintiff had no physical limitation to sitting, standing, walking or using his upper extremities**.  Thus, this claim is unavailing as well.

Plaintiff also argues that the ALJ improperly afforded little weight to Dr. Amann's opinion.  Dkt. No. 12 at 14-16.  Dr. Amann noted that Plaintiff's symptoms included pain in both legs, fatigue, and chronic dizziness "when about."  T 284.  He opined that Plaintiff had a marked limitation in his ability to deal with work stress, could sit about two hours, and could stand or

11

walk less than two hours in an eight-hour workday. T 285. He also opined that Plaintiff could occasionally lift or carry twenty pounds and frequently lift or carry less than ten pounds. T 286. Dr. Amann stated that he had treated Plaintiff once a month "or so." T 284.

First, the ALJ stated that he assigned "very little weight" to this opinion because there were "no supporting treatment notes." T 20. Indeed, the two treatment notes in the record that are signed by Dr. Amann provide very little, if any, support for the opinion.[9] The first treatment note, dated April 3, 2008, indicates that Plaintiff complained of difficulty breathing and leg pain. T 283. Dr. Amann noted that **he would evaluate Plaintiff at a later date** apparently because he had no records from Plaintiff's other health care providers. *Id.* The second treatment note, dated May 30, 2008, simply indicates that Plaintiff had a bacterial skin infection, and was prescribed an antibiotic. T 282. The skin infection was not cited by Dr. Amann for support of his restrictive assessment. In fact, when asked to identify the clinical findings and objective signs that support the assessment, Dr. Amann simply stated that Plaintiff had a tender right calf to palpitation, and that there was no gross swelling in either leg at that time. T 284. Thus, the treatment notes do not support the assessment.

Second, the ALJ also stated that he assigned "very little weight" to this opinion because there was no evidence that Dr. Amann had treated Plaintiff once a month as he claimed. T 20. Indeed, the record indicates that Dr. Amann evaluated Plaintiff on only two dates: May 30, 2008, and June 2, 2008. T 282, 284. As noted, Dr. Amann did not evaluate Plaintiff on April 3, 2008.

---

[9] To the extent that Plaintiff argues that the ALJ had a "duty" to develop the record by contacting Dr. Amann to obtain treatment notes, Dkt. No. 12 at 15, the record already contained treatment notes from Dr. Amann. T 282-83. Thus, the ALJ had no reason to contact Dr. Amann.

T 283.

Third, the ALJ stated that there was no indication of when Dr. Amann started treating Plaintiff. T 20. Indeed, the assessment fails to indicate when Dr. Amann started treating Plaintiff even though the assessment form provided space for the health care provider to indicate the "length of contact." T 284.

In sum, the RFC finding was supported by substantial evidence. The ALJ cited the specific evidence on which he relied, and properly afforded little weight to Dr. Amann's opinion. Accordingly, the decision in this regard should be affirmed.

### C.    Credibility

Plaintiff argues that the ALJ erred in his determination that Plaintiff was not totally credible. Dkt. No. 12 at 16-19. Defendant argues that the ALJ properly determined Plaintiff's credibility. Dkt. No. 13 at 13-15.

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)).

To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. 20 C.F.R. § 404.1529; *see also Foster v. Callahan*, Civ. No. 96-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998). First, the ALJ

13

must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. § 404.1529(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work. 20 C.F.R. § 404.1529(c). When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. § 404.1529(c)(3). An ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence. *Murphy v. Barnhart*, No. 00-9621, 2003 WL 470572, at *10 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999) and *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 U.S. Dist. LEXIS 11595, at *19 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.")).

In this case, the ALJ found that Plaintiff's medically determinable impairments could

14

reasonably be expected to produce the alleged symptoms, but that the statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible. T 20-21. The ALJ discussed the appropriate symptom-related factors. For instance, the ALJ discussed Plaintiff's daily activities, which included personal care, cooking, cleaning, drawing, watching television, and listening to the radio. T 254, 263. The ALJ also noted Plaintiff's symptoms, including joint and body pain, and anxiety. T 21. He further described the medications that Plaintiff indicated he took. *Id.*

The ALJ also pointed to several inconsistent statements made by Plaintiff. For instance, Plaintiff reported to Dr. Noia that his aunt did his laundry, but on the same day told Dr. Ganesh that he did his own laundry once a week. T 254, 263. The ALJ's consideration of any inconsistencies was proper. 20 C.F.R. § 416.929(c)(4) ("We will consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you."); *see also* S.S.R. 96-7p, 1996 WL 374186, at *5 (S.S.A. 1996).

The ALJ further discussed Plaintiff's poor work history. T 20. The ALJ found that the poor work history "was mostly attributed to the lengthy time he has spent in prison for . . . robbery and burglary." *Id.* The ALJ's consideration of Plaintiff's poor work history was proper. 20 C.F.R. § 416.929(c)(3); *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998) (noting that "poor work history may prove probative").

Plaintiff first argues that the ALJ improperly "relied on" Plaintiff's testimony that he was

15

unable to pay for medications in order to find Plaintiff not totally credible. Dkt. No. 12 at 17. However, the ALJ placed no such reliance on this testimony. Instead, he simply noted that Plaintiff stated that he could not afford medications or any other health treatment because he did not have health insurance, and noted that "[t]here are no treatment notes in the record to suggest that he is currently on any medication." T 21. The latter statement **supports** Plaintiff's claim that he is unable to pay for medication. Moreover, the fact that the ALJ cited evidence that confirms Plaintiff's testimony suggests that the ALJ engaged in a careful assessment of Plaintiff's credibility.

Second, Plaintiff argues that the ALJ mischaracterized part of Plaintiff's testimony. Dkt. No. 12 at 17. The ALJ noted that Plaintiff "testified that he is able to help care for his 4 and 5[-]year old nephews with his mother and has a girlfriend, which suggests that he has basic social skills." T 21. Plaintiff argues that the ALJ mischaracterized this testimony because he also testified that he had problems interacting with his mother and girlfriend, yelled at them, and had been kicked out by his girlfriend because she was scared of him. Dkt. No. 12 at 17 (citing T 320-21). However, when asked to describe his typical day, Plaintiff testified, "[W]hen I'm with my mom I have two nephews that I help her look after. . . . I distract them[.] I show them how to draw and stuff[.] I help them with their homework. . . . I get a bath set up for them . . . Other than that . . . I might be at my girlfriend's house [where she] massage[s] me . . . and we'll convers[e], [and] watch movies." T 311-12. Thus, the Court sees no mischaracerization.

Third, Plaintiff argues that the ALJ failed to discuss precipitating or aggravating factors for his deep vein thombrosis ("DVT"), the location, duration or intensity of pain caused by that

16

condition, and the treatment needed, such as stockings and elevation. Dkt. No. 12 at 17. Initially, I note that Plaintiff fails to identify such precipitating or aggravating factors, and the location, duration or intensity of pain caused by that condition. In any event, the ALJ specifically noted that Plaintiff stated that he had "pain in his joints and body." T 21. Moreover, the ALJ noted that Plaintiff stated that he could walk for five-to-ten minutes. *Id.* Indeed, Plaintiff stated that he could walk for five-to-ten minutes before stopping "to pet the dog or . . . just stop or go to the light." T 313-14. To the extent that Plaintiff limits his walking, this limitation appears to be due to his concern for personal safety. T 314. The ALJ also noted that Plaintiff stated that he could stand for approximately thirty-to-forty-five minutes, and could sit for more than one hour uninterrupted. T 21, 314-15. Thus, the ALJ discussed Plaintiff's testimony regarding his physical abilities, which presumably included any limitations Plaintiff felt he had from DVT.

Regarding Plaintiff's argument that the ALJ failed to discuss whether Plaintiff needed treatment other than pain medication, such as stockings or elevation, for his DVT, this argument is unavailing as well. Plaintiff points to a 2004 hospital discharge note in which it was recommended that Plaintiff use a compression stocking and elevate his right ankle. Dkt. No. 12 at 17. There is no indication at the hearing, which was held almost four years later, that Plaintiff used those treatment methods nor does Plaintiff point to evidence indicating that he did. Moreover, Dr. Amann specifically indicated on June 2, 2008, that Plaintiff did not need a job which permitted shifting positions at will from sitting, standing, or walking, and **did not need to elevate his leg(s) when sitting for prolonged periods**. T 286.

In light of the foregoing, the ALJ's analysis of Plaintiff's credibility was supported by

17

substantial evidence. Accordingly, the decision in this regard should be affirmed.

### D.     Medical Vocational Guidelines

Plaintiff argues that the ALJ erred by failing to consult a vocational expert and relying on the Medical-Vocational Guidelines ("the Grids") to direct a finding of not disabled. Dkt. No. 12 at 18-19. Defendant argues that the Grids support a finding that Plaintiff is not disabled. Dkt. No. 13 at 18-20.

At step five, "there is only a limited burden shift to the Commissioner." *Poupore v. Apfel*, 566 F.3d 303, 306 (2d Cir. 2009). Indeed, the Commissioner "need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's residual functional capacity." *Id.* (citing 20 C.F.R. § 404.1560(c)). Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions in the country. 20 C.F.R. §§ 404.1566(a), 416.966(a). In making this determination, the ALJ may apply the grids or consult a vocational expert. *See Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999). If the claimant's characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether he or she is disabled. *Pratts v. Chater*, 94 F.3d 34, 38-39 (2d Cir. 1996). However, if a claimant suffers from non-exertional impairments that "significantly limit the range of work permitted by exertional limitations," the ALJ should elicit testimony from a vocational expert to determine if jobs exist in the economy that the claimant can still perform. *Id.* at 39 (quoting *Bapp v. Bowen*, 802 F.2d 601, 604-05 (2d Cir. 1986)); 20 C.F.R. §§ 404.1566(e), 416.966(e). The vocational expert may testify as to the existence of jobs in the national economy and as to the claimant's ability to perform any

of those jobs, given his functional limitations. *See Colon v. Comm'r of Soc. Sec.*, No. 6:00-CV-0556, 2004 WL 1144059, at *6 (N.D.N.Y. Mar. 22, 2004) (Sharpe, J.).

Plaintiff argues that the ALJ should have consulted a vocational expert instead of relying on the Grids because the RFC determination was flawed and because Dr. Amann "indicated there are significant nonexertional limitations, [including] bipolar disorder, fatigue, chronic dizziness, and pain." Dkt. No. 12 at 19. This argument is unpersuasive. First, the RFC determination was supported by substantial evidence. *See supra* Part (V)(B). Second, Dr. Amann simply noted that Plaintiff complained of experiencing fatigue, chronic dizziness, and pain, and noted that he had a history of bipolar disorder. T 284. Dr. Amann made no finding that these symptoms and past diagnosis were "nonexertional limitations" as defined by the Regulations, and the ALJ properly found no such limitations.

In sum, Plaintiff's arguments are unavailing. Therefore, the matter in this regard should be affirmed.

**WHEREFORE**, for the reasons set forth above, it is hereby

**RECOMMENDED**, that the decision of the Commissioner of Social Security be **AFFIRMED**, and the complaint (Dkt. No. 1) be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: June 3, 2010
　　　　Syracuse, New York

　　　　　　　　　　　　　　　　　　　　／s／ George H. Lowe
　　　　　　　　　　　　　　　　　　　　George H. Lowe
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge